UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

DAVID W. BOYCE,

                **Plaintiff,**

v.                                     **Civil No. 2:14cv249**

THOMAS E. BENNETT,

PATRICIA L. MONTGOMERY,

JAMES D. FOX,

LYNN M. PERKINSON, and

RICHARD H. GADDIS,

                **Defendants.**

## OPINION AND ORDER

This matter is before the Court on three motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), filed by Defendants James D. Fox ("Fox"), ECF No. 165, Lynn M. Perkinson ("Perkinson"), ECF No. 167, and Richard H. Gaddis ("Gaddis"), ECF No. 169, (collectively, "Defendants" or "12(b)(6) Defendants").[1]  Because the allegations in the second amended complaint against the 12(b)(6) Defendants are substantially

---

[1] Multiple summary judgment motions, including motions that have only recently become ripe, as well as other motions seeking other forms of relief, are currently pending before the Court.  Such motions will be addressed by separate Order, with a summary judgment ruling being reserved until after oral argument is conducted.  As Plaintiff has recently been authorized by the Court to conduct an additional deposition in this case, the summary judgment hearing will be scheduled for a date after such deposition has been completed.

similar, as are the arguments in support of dismissal, the instant Opinion and Order collectively addresses all three pending 12(b)(6) motions. For the reasons set forth below, the motions to dismiss are **GRANTED** in part, and **DENIED** in part.

## I. Factual and Procedural Background

The relevant factual and procedural background has been set forth in detail in previous Orders issued in this case, ECF Nos. 57, 103, and is incorporated by reference herein.[2] This action arises out of David Boyce's ("Boyce" or "Plaintiff") vacated 1991 state-court conviction for murder, which resulted in Boyce's imprisonment for twenty-two years. Plaintiff initially filed suit against the City of Newport News, Thomas E. Bennett ("Bennett"), the lead Newport News Police detective that worked on Boyce's criminal case; Patricia L. Montgomery ("Montgomery"), a Newport News Police evidence technician; and four "John Doe" Newport News Police officers. The four John Doe defendants were later replaced by named Defendants Fox, Perkinson, Gaddis, and Paul W. Haymes ("Haymes"). The claims against the City of Newport News and Haymes have been dismissed and/or withdrawn.

Taking the allegations in the second amended complaint as true for the purposes of the pending 12(b)(6) motions, Timothy Kurt Askew was stabbed to death in the early morning of May 19,

---

[2] These prior Orders were issued by Senior United States District Judge Robert G. Doumar before the instant case was reassigned to the undersigned judge.

2

1990 in the Newport News Econo Lodge Motel.  Second Am. Compl.
¶ 45, ECF No. 115.  On the same day as the murder, Plaintiff was
questioned by the Newport News Police and either Bennett or
someone at Bennett's direction took a Polaroid picture of Boyce
("the Polaroid"), who at the time had short hair.  Id. ¶¶ 61,
69-70.  The Polaroid was not provided to Boyce prior to or
during his criminal trial, and Boyce was convicted in part on:
(1) eyewitness testimony asserting that a person with shoulder-
length hair was seen fleeing the scene of the murder; and
(2) Montgomery's false testimony that Boyce had long hair when
the police first interviewed him.  Id. ¶ 70, 166-68.

Boyce was sentenced to two life terms in prison and,
continuing to assert his innocence, he pursued various forms of
post-trial relief.  Id. ¶¶ 187-93, 198-203.  In 2005, Boyce
filed state and federal habeas petitions seeking to have his
conviction overturned, and his federal petition was stayed
pending resolution of the state proceedings.  Id. ¶ 214.  In
conjunction with Boyce's 2005 state habeas petition, Boyce
submitted a subpoena to the Newport News Police Department
seeking the production of the criminal investigative file.  Id.
¶¶ 214-15.  In 2006, Defendants Perkinson and Gaddis, under the
supervision of Defendant Fox, assembled the file for production,
and while all three Defendants were aware that the file
contained an envelope with numerous photographs, to include the

3

Polaroid depicting Boyce with short hair, the Polaroid was not produced. Id. ¶¶ 217-20. During the pendency of his state habeas petition, Boyce continued making requests for the Polaroid, and it was finally produced in 2008. Id. ¶ 222. The Polaroid was discovered by now dismissed Defendant Haymes, who reports that it only took him about a minute to locate the Polaroid in the police records box labeled "Boyce." Id. ¶ 223.

In 2010, following a multi-day evidentiary hearing, the state court concluded that while the prosecution's failure to turn over the Polaroid was a violation of Brady v. Maryland, (1963), and that such violation undermined confidence in the guilty verdict, Boyce's state habeas petition was untimely and relief was therefore unavailable. Id. ¶¶ 225-27. Three years later, after the conclusion of all state habeas appeal proceedings, on March 19, 2013, Boyce's federal habeas petition was granted, and Boyce's conviction was vacated. Id. ¶ 240. Later that year, state prosecutors elected not to re-try Boyce. Id. ¶ 243. Boyce thereafter filed the instant action seeking civil damages pursuant to 42 U.S.C. § 1983 and various state law theories of recovery.

The three motions to dismiss currently before the Court are filed by Defendants that had no involvement in Boyce's case until 2006 when they participated in responding to subpoena requests associated with Boyce's 2005 state habeas petition.

4

The second amended complaint states three grounds for relief against such Defendants: Count Two - a § 1983 claim alleging an ongoing conspiracy to deny Boyce a constitutional trial, including ongoing concealment of the Polaroid; Count Three - a § 1983 claim alleging deprivation of access to the courts; and Count Seven - a gross negligence claim under Virginia law. The various arguments seeking dismissal of each of these claims are addressed below.

## II. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a complaint, or a claim within a complaint, based on the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A motion to dismiss pursuant to Rule 12(b)(6) must be read in conjunction with Rule 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), so as to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests,'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (omission in original) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

The United States Supreme Court has interpreted the pleading standard set forth in Rule 8(a) as requiring that a complaint include enough facts for the claim to be "plausible on its face" and thereby "raise a right to relief above the

speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 555, 570 (internal citations omitted). The plausibility requirement is "not akin to a 'probability requirement,' but it asks for more than a sheer possibility" that a defendant is liable. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 556). In other words, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 663.

Because a Rule 12(b)(6) motion tests the sufficiency of a complaint without resolving factual disputes, a district court "'must accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of the plaintiff.'" Kensington Volunteer Fire Dep't v. Montgomery County, 684 F.3d 462, 467 (4th Cir. 2012) (quoting E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 440 (4th Cir. 2011)). While the court must accept all well-pled factual allegations as true, legal conclusions are not similarly accepted. Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555). Applying the above rules, the ultimate determination as to "whether a complaint states a plausible claim for relief" is a "context-specific task that requires the

6

reviewing court to draw on its judicial experience and common sense." Id. at 679 (citation omitted).

### III. Discussion

#### A. § 1983 Conspiracy to Violate Constitutional Rights

##### 1. Timeliness

Defendants first argue that Boyce's civil conspiracy claim, which alleges that Defendants participated in a conspiracy to violate Boyce's due process rights and right to a fair trial (primarily through ongoing intentional suppression of the exculpatory Polaroid), is untimely as it was not filed within two years of the date on which the Polaroid was disclosed to Boyce. It is well-established that: (1) the Virginia two-year limitation period for personal injury actions applies to Boyce's § 1983 claims, Va. Code Ann. § 8.01-243(A); (2) while "state law determines the applicable statute of limitations for § 1983 claims, federal law governs the date on which that limitations period begins to run," Owens v. Baltimore City State's Attorneys Office, 767 F.3d 379, 388 (4th Cir. 2014) (citing Wallace v. Kato, 549 U.S. 384, 388 (2007)); (3) although the "standard rule" holds that § 1983 claims accrue "'when the plaintiff has a complete and present cause of action' . . . that is, when the plaintiff knows or has reason to know of his injury," such standard rule does not apply to all § 1983 claims, id. at 389 (quoting Wallace, 549 U.S. at 388); (4) "to determine the date

7

of accrual for a particular § 1983 claim, a court must look to the common-law tort that is most analogous to the plaintiff's § 1983 claim and determine the date on which the limitations period for this most analogous tort claim would begin to run," id. (citing Wallace, 549 U.S. at 388); and (5) "[u]nder the common law, the limitations period for a plaintiff's malicious prosecution claim commences when the [criminal] proceedings brought against him are resolved in his favor," a concept referred to as the "favorable-termination requirement," id. at 390 (citations omitted). Synthesizing the above, when a § 1983 claim is most akin to a common law malicious prosecution claim, or otherwise depends on undercutting the validity of a prior state conviction, such claim does not accrue until the prior conviction "has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Heck v. Humphrey, 512 U.S. 477, 486-87 (1994).

Here, because this Court finds that "the tort of malicious prosecution . . . provides the closest analogy to [Boyce's] Brady-like [conspiracy] claim," federal law provides that the limitations period for such claim began to run no earlier than the date on which the Richmond division of this Court issued a writ of habeas corpus (March 19, 2013). Owens, 767 F.3d at 390.

Moreover, because the Fourth Circuit has held that the limitations period does not begin running when a new trial is granted, but instead requires charges to be favorably terminated in a manner in which they "cannot be revived," id., the limitations clock likely did not begin running until September 18, 2013, when the state charges against Boyce were terminated. As 12(b)(6) Defendants do not contend that Boyce's conspiracy claim is untimely when either of the above stated dates are utilized for the limitations calculation, Defendants' argument fails to justify dismissal of Count Two.[3]

---

[3] Defendants cite an unpublished Fourth Circuit opinion decided years prior to Owens for the proposition that "favorable termination" is not an element of a § 1983 conspiracy claim. Wright v. Oliver, 99 F.3d 1133 (4th Cir. 1996) (table). Wright, however, appears to distinguish between claims alleging a conspiracy to violate Fourth Amendment rights, a conspiracy to obstruct justice, and "behavior constituting malicious prosecution," concluding that favorable termination was not required for the two conspiracy claims, but was required for the malicious prosecution claim. Id. Moreover, controlling case law establishes that a § 1983 conspiracy claim requires proof that the conspirators acted "in concert and that some overt act was done in furtherance of the conspiracy which resulted in [the] deprivation of a constitutional right," Hinkle v. City of Clarksburg, W.Va., 81 F.3d 416, 421 (4th Cir. 1996) (emphasis added). Here, because the alleged conspiracy identifies the constitutional harm as the intentional (and ongoing) suppression of exculpatory evidence, and such constitutional violation, if proven, necessarily calls into question the validity of Boyce's state conviction, this Court is not persuaded that the broad language used in the unpublished Wright opinion extends to all § 1983 conspiracy claims, including those alleging conspiracies to commit Brady-like violations or malicious prosecution. See Robinson v. Maruffi, 895 F.2d 649, 654-55 (10th Cir. 1990) ("Not until the end of this second criminal trial, with Robinson's acquittal, did his malicious prosecution conspiracy claim accrue."); Rose v. Bartle, 871 F.2d 331, 352 (3d Cir. 1989) ("[I]f the plaintiffs' malicious prosecution claims did not accrue until favorable termination, it is difficult to see how a cause of action for conspiracy to prosecute maliciously could have accrued before that date."); Nieves v. McSweeney, 73 F. Supp. 2d 98, 104 (D. Mass. 1999) ("[P]laintiffs'

## 2. Adequacy of Factual Allegations

Defendants next argue that Boyce fails to advance sufficient facts to state a plausible claim that Defendants participated in a conspiracy to deny Boyce a fair trial through, among other things, suppressing the exculpatory Polaroid. However, the amended complaint includes numerous factual assertions supplying circumstantial evidence in support of the assertion that, among other abuses, the Polaroid was intentionally withheld from Boyce for many years by Bennett and others at the Newport News Police Department. Boyce further asserts that Defendants Fox, Perkinson, and Gaddis, were aware of the Polaroid in the criminal file maintained by the Newport News Police Department, that they communicated with each other about the contents of such file, were aware of the importance of the Polaroid, and yet they failed to produce it in response to a subpoena. See Hinkle v. City of Clarksburg, W.Va., 81 F.3d 416, 421 (4th Cir. 1996) (indicating that a § 1983 conspiracy claim must be supported by facts that "reasonably lead to the inference that [the conspirators] positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan").

---

causes of action for conspiracy to commit malicious prosecution did not arise, let alone accrue, until the underlying criminal proceedings were terminated in their favor.").

While innocent explanations for their conduct have been advanced by 12(b)(6) Defendants, and such explanations may prevail at the summary judgment or trial stages, Plaintiff has pled sufficient circumstantial facts to plausibly support the claim that the 12(b)(6) Defendants knowingly joined a conspiracy to violate Boyce's constitutional rights to a fair trial and that they took steps to conceal the exculpatory Polaroid from Boyce.[4]   Accordingly, Defendants' dismissal motions fail to demonstrate the inadequacy of the factual allegations.

### 3. Intracorporate Immunity Doctrine

Defendants alternatively assert that Count Two should be dismissed because Boyce alleges a conspiracy only among individuals within the Newport News Police Department and that, with limited exceptions, a single entity and its employees are not legally capable of entering into a conspiracy. ePlus Tech., Inc. v. Aboud, 313 F.3d 166, 179 (4th Cir. 2002). Boyce counters by highlighting the allegation in the second amended complaint asserting that the named Defendants conspired with individuals "who were not employees of the Newport News Police

---

[4] While 12(b)(6) Defendants appear to invite the Court to consider the fact that Boyce conducted substantial discovery prior to filing the second amended complaint, this Court's 12(b)(6) analysis is limited to the facts as alleged by Boyce, viewed in his favor.

Department, including, but not limited to [Herman] Elkins."[5] Boyce further argues in opposition to dismissal that, because the 12(b)(6) Defendants' conspiratorial acts occurred more than 15 years after the conspiracy began, a plausible claim exists that named or unnamed conspirators were no longer employed by the Newport News Police Department in 2006 through 2008 yet they still played a part in the ongoing conspiracy.

While it appears that Defendants seek to recast the allegations in the second amended complaint as asserting the existence of two discrete conspiracies (one occurring in the early 1990s between Elkins, Bennett, and Montgomery, and the second beginning in 2006 between Fox, Perkinson, and Gaddis), such characterization is not in line with this Court's 12(b)(6) obligation to construe the facts and reasonable inferences in Boyce's favor. The second amended complaint, read in Boyce's favor, sufficiently asserts a single far-reaching conspiracy aimed at depriving Boyce of a constitutionally legitimate trial in the early 1990s and continuing over time to both seek to conceal the prior police misconduct and to continue to prevent Boyce from securing a constitutionally legitimate (re)trial. While it is undisputed that the 12(b)(6) Defendants had no involvement in Boyce's case until 2006, Defendants cite no

---

[5] Herman Elkins testified against Boyce at a preliminary state hearing and at Boyce's criminal trial, testifying that Boyce confessed his guilt to Elkins while in state custody.

authority that would absolve them from § 1983 liability if they are found to have joined a still ongoing, or "revived," conspiracy between Bennett and Elkins.    Notably, the second amended complaint not only alleges that Bennett conspired with Elkins in the early 1990s to deprive Boyce of a fair trial, but further alleges that Bennett met with Elkins about Boyce's case approximately 15 years after Boyce was convicted.   Cf. Haley v. City of Boston, 657 F.3d 39, 49-50 (1st Cir. 2011) ("Deliberate concealment of material evidence by the police, designed to grease the skids for false testimony and encourage wrongful conviction, unarguably implicates a defendant's due process rights").

As discussed above, the 12(b)(6) standard requires a case-by-case determination as to whether a complaint states a plausible claim, and, here, the Court finds that Boyce's second amended complaint meets such standard.    The Court's case-specific determination in no way suggests that a typical § 1983 plaintiff may easily overcome the intracorporate immunity doctrine merely by naming a police informant/cooperator as a co-conspirator.    However, here, in light of Elkins' extensive involvement in criminal proceedings against Boyce, the factual assertion that Elkins recanted his trial testimony, and the factual assertion that Bennett and/or other officers had contact with Elkins years after Boyce's trial and convinced him to

13

modify his conduct in order to obstruct Boyce from securing a retrial, all color this Court's interpretation of the players involved in the conspiracy.[6] Additionally, the ease with which the Polaroid was ultimately found in records maintained by the Newport News Police provides further gloss supporting the plausibility of the claim that a conspiracy involving Elkins remained ongoing, or was revived, in the mid-2000s.[7]

---

[6] Judge Doumar's prior 12(b)(6) rulings, ECF Nos. 57, 103, constitute the "law of the case." Boyce has not demonstrated that such rulings are clearly erroneous, and this Court's analysis herein in no way seeks to undercut such rulings. TFWS, Inc. v. Franchot, 572 F.3d 186, 191 (4th Cir. 2009). As previously explained by Judge Doumar: (1) the absolute immunity enjoyed by trial witnesses precludes Boyce from recovering § 1983 damages based on Elkins' false testimony or the existence of a conspiracy to present false testimony; and (2) to avoid erosion of such immunity, Boyce cannot rely on false testimony as circumstantial evidence in support of his Brady-like claims. ECF No. 57, at 7-8. That said, Judge Doumar's prior rulings do not appear to squarely address the admissibility of pre-testimonial acts associated with the fabrication of evidence (to the extent applicable), or post-testimonial acts years removed from trial testimony. Cf. Rehberg v. Paulk, 132 S. Ct. 1497, 1507 n.1 (2012) (noting that while absolute witness immunity extends to conspiracies to testify falsely, it does not "extend[] to all activity that a witness conducts outside of the grand jury room," and is inapplicable when police officers "fabricate evidence concerning an unsolved crime"); Lisker v. City of Los Angeles, 780 F.3d 1237, 1242 (9th Cir. 2015) (distinguishing "conspiracies to testify falsely from 'non-testimonial' acts," such as "preventing witnesses from coming forward") (internal citations and quotation marks omitted).

[7] The Court agrees with Defendants that the second amended complaint provides no direct link between Bennett/Elkins and the 12(b)(6) Defendants. However, although arguably a close call, when the second amended complaint is considered in its entirety, the Court finds that there are sufficient facts to support the plausible inference that, in order to conceal past misconduct by a fellow officer, in 2006, the 12(b)(6) Defendants knowingly joined a conspiracy aimed at continuing the non-production of an exculpatory Polaroid that was easily locatable in an investigative file maintained by the police.

Intracorporate immunity is therefore not available as a shield from liability at the 12(b)(6) stage.[8]

### 4. Qualified Immunity

"Qualified immunity protects public officials from [a civil money damages] suit when the state of the law is such that they would not have known that their conduct violates statutory or constitutional rights." Owens, 767 F.3d at 395 (citations omitted). "To establish a qualified-immunity defense, a public official must demonstrate that (1) a plaintiff has not alleged or shown facts that make out a violation of a constitutional right, or that (2) the right at issue was [not] 'clearly established' at the time of its alleged violation." Id. at 395-96 (alternation in original) (internal quotation marks and citation omitted). Here, Defendants jointly argue that Boyce has not alleged a violation of a constitutional right, and that any such right was not clearly established. Additionally, Defendant Fox further argues that because he only had a supervisory role in the search for the Polaroid, his conduct did not violate a clearly established right.

---

[8] Defendants contend in their reply briefs that they are shielded by intracorporate immunity unless there are allegations that they personally met with and directly conspired with Elkins. Such statement, unsupported by citations to case law, is uncompelling. Cf. Snell v. Tunnell, 920 F.2d 673, 702 (10th Cir. 1990) (indicating that a plaintiff advancing a § 1983 conspiracy claim is not required to prove that all participants in the conspiracy knew each other or that they knew the precise contours of the illegal plan) (citations omitted); Cameo Convalescent Ctr., Inc. v. Senn, 738 F.2d 836, 841 (7th Cir. 1984) (same).

The Court finds that the 12(b)(6) Defendants fail to demonstrate at this stage that they are shielded from liability on the conspiracy count based on qualified immunity. The second amended complaint alleges that all three Defendants, including Fox, communicated with each other (including through written communications) about the search for the Polaroid and knowingly conspired to hide such exculpatory evidence in order to obstruct Boyce's efforts to secure a constitutionally adequate trial/retrial. Fourth Circuit precedent "unmistakably provides that, by 1988, a police officer violates clearly established constitutional law when he suppresses material exculpatory evidence in bad faith." Id. at 401.

For all of the reasons set forth above, Defendants' motion to dismiss Count Two of the second amended complaint is denied.

### B. § 1983 Deprivation of Access to Courts

Defendants' 12(b)(6) motions contend that Boyce fails to allege facts supporting an actionable claim for deprivation of access to the courts (Count Three). As discussed below, such argument is well-founded because Boyce's own factual allegations demonstrate that he was not denied access to the courts by the actions of any of the 12(b)(6) Defendants.

In Christopher v. Harbury, 536 U.S. 403, 414 (2002), the Supreme Court discussed the contours of the constitutional right to access to the courts, and distinguished between litigation

16

opportunities "yet to be gained" and those opportunities "already lost." Lost opportunities, which is what Boyce endeavors to allege, include the loss of a settlement or inadequate settlement of a meritorious civil case, the loss of an opportunity to sue (such as when a limitations period expires), or the "loss of an opportunity to seek some particular order of relief," all of which look "backward to a time when specific litigation ended poorly, or could not have commenced, or could have produced a remedy subsequently unobtainable."[9] Id. (citations omitted). The Supreme Court further explained that, while the constitutional basis for lost access claims is unsettled, both Supreme Court and Circuit precedent rest on the recognition that the lost access claim "is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." Id. Accordingly, "[i]t follows that the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint" alleging a lost access claim. Id. Moreover, a plaintiff is required to "identify a remedy that may be awarded as recompense" for the lost access that is "not otherwise available" as a remedy for a pending cause of action or as a

---

[9] In contrast to litigation opportunities that have been lost, the "yet to be gained" opportunities are those where a prisoner or other litigant is presently being denied access and is seeking "to open the courthouse doors" for contemplated litigation. Christopher, 536 U.S. at 413. These situations include prisoners asserting a lack of access to the courts due to an inadequate law-library. Id.

remedy in "some suit that may yet be brought." Id. at 415-16, 421.

Here, Boyce argues that the delayed production of the Polaroid had a negative impact on his state and federal habeas cases. However, Boyce's state habeas action, filed in 2005, was denied as untimely filed, and thus, the 2006 conduct of 12(b)(6) Defendants had no material bearing on its ultimate resolution. As to Boyce's federal habeas case, such case was resolved in Boyce's favor after the Polaroid was produced, and thus, Boyce does not plausibly state a lost or frustrated opportunity to access the federal courts. See Cook v. Howard, 484 F. App'x 805, 825 (4th Cir. 2012) (recognizing that "access to courts claims require proof 'that the defendants' actions foreclosed [the Appellants] from filing suit in . . . court or rendered ineffective any . . . remedy [they] previously may have had'" (alterations in original) (quoting Swekel v. City of River Rouge, 119 F.3d 1259, 1263-64 (6th Cir. 1997))); Estate of Smith v. Marasco, 318 F.3d 497, 511 (3d Cir. 2003) (explaining that when a cover-up is attempted but is discovered in time for a plaintiff's claims to be fully developed and addressed on the merits by the appropriate court, access has not been unconstitutionally denied); W. v. Brankel, No. 13-3237-CV-S-DGK, 2015 WL 225465, at *8 (W.D. Mo. Jan. 16, 2015) ("[T]here is no denial of access if the cover-up is exposed in time for the

plaintiff to seek redress." (citing <u>Vasquez v. Hernandez</u>, 60 F.3d 325, 328-29 (7th Cir. 1995))).

While Boyce argues that the federal habeas relief he ultimately obtained was unconstitutionally delayed based on the 12(b)(6) Defendants' conduct, he fails to demonstrate that such delay, absent some concomitant prejudice/injury, is sufficient to constitute the denial of a constitutional right to access the courts.[10]  See <u>White v. White</u>, 886 F.2d 721, 723 (4th Cir. 1989) (indicating that, to state a claim, the plaintiff must allege how a claimed delay "deprived him of meaningful access to the courts"); <u>Pronin v. Johnson</u>, No. 15-6534, 2015 WL 5833939, at *1 (4th Cir. Oct. 7, 2015) (unpublished) ("To prevail on a claim that he was denied access to the courts, a [§ 1983 plaintiff] must demonstrate that he suffered an actual injury, such as missing a court-imposed deadline or being unable to file a complaint because of the Defendants' actions" (citing <u>Lewis v. Casey</u>, 518 U.S. 343, 351-52 (1996))); <u>see also</u> <u>Gentry v. Duckworth</u>, 65 F.3d 555, 558-59 (7th Cir. 1995) (explaining that while the Seventh Circuit's formulation of the applicable test

---

[10] As Defendants argue, Boyce also fails to allege what degree of delay was directly attributable to the 12(b)(6) Defendants' conduct. Notably, the evidentiary hearing in the state habeas case was not conducted until <u>two years after</u> the Polaroid was ultimately produced. Accordingly, while common sense would suggest that the delayed production of the Polaroid had <u>some impact</u> on the timing of the resolution of Boyce's habeas cases, the facts in the second amended complaint do not effectively distinguish the delay linked to the Polaroid from other factors causing the state habeas process to take such a lengthy period of time.

requires proof of "interruption and/or delay" of litigation, such phrasing "does not mean that any delay is a detriment," and that "[r]egardless of the length of an alleged delay, a prisoner must show actual substantial prejudice to specific litigation") (emphasis added) (internal citations and quotation marks omitted). In addition to failing to allege prejudice to his state or federal habeas litigation sufficient to support a constitutional lost access claim, Boyce fails to identify a remedy "that may be awarded as recompense" for the alleged misconduct that is "not otherwise available" as a remedy on an existing claim in this action. Christopher, 536 U.S. at 415-16, 421.

Boyce's second amended complaint also fails to adequately identify any other legal action or claim that was lost or frustrated due to the 12(b)(6) Defendants' conduct between 2006 and 2008. While the second amended complaint includes the broad assertion that the delayed production of the Polaroid prevented Boyce from pursuing actions "in the civil courts of the Commonwealth of Virginia seeking redress and compensation for Defendant officers' wrongful conduct," ECF No. 115 ¶ 288, such vague assertion is insufficient to state a plausible right to relief. See Fennell v. Allen, No. 3:09CV468, 2011 WL 2144560, at *4 (E.D. Va. May 31, 2011) ("[I]n order to plead a backward-looking denial of access to the courts claim, a plaintiff must

20

identify, with specificity, a non-frivolous legal claim that the defendant's actions prevented him from litigating," and such underlying legal claim must be stated "'in accordance with Federal Rule of Civil Procedure 8(a), just as if it were being independently pursued'" (emphasis added) (quoting Christopher, 536 U.S. at 417)).

In sum, even assuming that 12(b)(6) Defendants joined the conspiracy in 2006 to knowingly violate Boyce's constitutional rights, Boyce's state and federal habeas petitions were already pending at that time and both petitions were not resolved until after the Polaroid was produced to Boyce in 2008. Accordingly, there is no plausible allegation that the resolution of either habeas case was negatively impacted by the delayed production of the Polaroid. Additionally, Boyce fails to identify any other action or claim that could have been filed in 2006, but was lost, forfeited, or otherwise permanently hindered because the Polaroid was not produced until 2008. While the delay in production alleged by Boyce could plainly support additional damages with respect to Boyce's other § 1983 claims, including his conspiracy claim, Boyce fails to plead facts that support an independent constitutional claim grounded in the denial of access to the courts. Boyce's denial of access claim against the 12(b)(6) Defendants is therefore dismissed.

## C. Gross Negligence

Defendants' 12(b)(6) motions contend that Boyce fails to allege facts supporting an actionable claim for gross negligence under Virginia law (Count Seven). As argued by Defendants, this Court finds it appropriate to incorporate herein Judge Doumar's prior 12(b)(6) analysis of Boyce's gross-negligence claims against Bennett and Montgomery as "the law of the case." ECF No. 57, at 9-12; see Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 817 (1988) (explaining that, as a rule, a federal court "should be loathe" to revisit decisions of a coordinate court "in the absence of extraordinary circumstances"); TFWS, Inc. v. Franchot, 572 F.3d 186, 192 (4th Cir. 2009) (explaining that "[t]he law of the case doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case" unless, among other exceptions, the prior decision was "clearly erroneous and would work manifest injustice," in that it was "wrong with the force of a five-week-old, unrefrigerated dead fish") (internal quotation marks and citations omitted). Consistent with Judge Doumar's prior rulings, 12(b)(6) Defendants' motions to dismiss the state-law gross negligence claims are granted.

Judge Doumar previously dismissed similar state-law gross negligence claims asserted by Boyce against Bennett and

22

Montgomery based on his legal finding that Boyce failed to identify a duty under Virginia law "not to be grossly negligent" by "concealing evidence" or "failing to alleviate the harm . . . by refusing to turn over . . . evidence." ECF No. 57, at 10. For the purposes of this case, the undersigned Judge adopts such prior legal finding regarding the lack of a viable state-law "gross negligence" cause of action against a city police officer for negligent investigation and/or negligent production of investigative materials. Boyce fails to demonstrate that Judge Doumar's prior ruling was clearly erroneous, and case law provides further support for Judge Doumar's analysis. See Lewis v. McDorman, 820 F. Supp. 1001, 1008 (W.D. Va. 1992) (dismissing a "willful and wanton negligence" claim because the plaintiff had "cited no authority for the existence, under Virginia law, of a duty upon police officers to exercise reasonable care in conducting investigations," further explaining that the police detective's conduct "either amounted to malicious prosecution, with its constitutional effects, or it was not actionable under Virginia law"); Durham v. Horner, 759 F. Supp. 2d 810, 815 (W.D. Va. 2010) ("Virginia law recognizes no [gross negligence] cause of action against police officers for conducting investigations.").[11]

---

[11] Boyce's citations to a Virginia case addressing negligence claims outside of the police investigation context is insufficient to

23

In adopting Judge Doumar's finding, the Court rejects Boyce's efforts to distinguish between a negligent initial investigation and subsequent negligence associated with a police investigative file. ECF No. 179, at 27 n.4. Judge Doumar's prior ruling was not limited to dismissing allegations associated with the initial investigation, but also dismissed Boyce's claim that Bennett and Montgomery were grossly negligent by failing to alleviate prior concealment of evidence through "refusing to turn over that evidence." ECF No. 57, at 10; see Orig. Compl., ECF No. 1 ¶ 313 (asserting a gross negligence claim against Bennett and Montgomery based, in part, on a claimed duty to "turn[] over [exculpatory and impeachment evidence] to the proper parties as required and/or when requested") (emphasis added). Boyce's state-law gross negligence claims against the 12(b)(6) Defendants are therefore dismissed based on the law of the case.

---

demonstrate that Judge Doumar's prior ruling is clearly erroneous. See First Virginia Bank-Colonial v. Baker, 225 Va. 72, 79 (1983) (discussing tort-liability of a clerk of court). Notably, state court actions for malicious prosecution "arising from a criminal case" are "not favored" under Virginia law, and the requirements are "more stringent than those applied to other tort actions," Ayyildiz v. Kidd, 220 Va. 1080, 1082 (1980), which at a minimum suggests a reason why Virginia courts may treat investigative tort actions against police officers differently. Because recognizing a tort action for a "negligent police investigation" or "negligent police maintenance of investigative records," would conceivably undercut the heightened requirements of malicious prosecution actions, Boyce's citation to Baker fails to demonstrate clear error in the prior ruling.

## IV. Conclusion

As set forth above, the Court **GRANTS in part, and DENIES in part,** Defendants' Fox, Perkinson, and Gaddis' motions to dismiss Counts Two, Three, and Seven of the second amended complaint. ECF No. 165, 167, and 169. Such motions are **GRANTED** with respect to Count Three (§ 1983 access to courts) and Count Seven (state-law gross negligence) and **DENIED** as to Count Two (§ 1983 conspiracy). The Court will revisit Defendants' arguments as to the viability of the conspiracy claim set forth in Count Two based on the <u>developed factual record</u> after a hearing is conducted as part of the summary judgment process. As indicated above, such hearing will be conducted after Boyce has completed the supplemental discovery recently authorized by the Court.

The Clerk is **REQUESTED** to send a copy of this Opinion and Order to all counsel of record.

**IT IS SO ORDERED.**

/s/ _Mark S. Davis_
Mark S. Davis
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
November 9 , 2015